**CUYAHOGA HEIGHTS** (Village), **Plaintiff-Appellee, v. CLEVELAND** (City) et, **Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24405. Decided March 20, 1959.

Walter & Haverfield, for plaintiff-appellee.

Ralph S. Locher, Director of Law, Joseph H. Crowley, Andrew R. Sarisky, for defendants-appellants.

(DOYLE, PJ, HUNSICKER, J, of the Ninth District, RADCLIFF, J, of the Fourth District, sitting by designation in the Eighth District.)

### OPINION

BY HUNSICKER, J

The village of Cuyahoga Heights, Ohio, herein called "village," filed its action against the city of Cleveland, Ohio, and various public officials of that city, herein called "city," wherein the village asked that an order be issued against the city and its employees, restraining it and them "from issuing water bills with service charges added thereto and from shutting off water to any users of water within the village of Cuyahoga Heights who refuse to pay sewer charges * * *."

The village claims that it succeeded to all of the benefits of a contract entered into between the village of Newburgh Heights and the

city on August 11, 1916, whereby the city granted to that village the right to connect, at its sole cost and expense, any and all of its present or future sanitary sewers to an intercepting sewer which the city proposed to construct through the village, which interceptor sewer ran to a sewer treatment plant which the city sought to maintain in the village.

The village says that the terms of the contract further provided that sewage of the village would be disposed of by the city in like manner as other sewage conveyed through the intercepting sewer, and without cost or expense to the village.

The village further asserts that the validity of the contract was the subject of litigation in the courts of Cuyahoga County, in which litigation the contract was declared to be a valid and binding agreement; that the village had succeeded to the rights and benefits conferred upon the village of Newburgh Heights under said contract; and that since August 11, 1916, the city has, without charge or expense to the village or any of its residents or inhabitants, disposed of the sanitary sewage which was discharged into the intercepting sewer by the residents or inhabitants of the village.

The village claims that, without prior notice of any kind, the city sent water bills to all industrial plants within the vilage, which included, for the first time, a sewer service or rental charge; that domestic users were not sent bills with a sewer rental charge added to the bill; that the industrial users refused to pay the sewer rental charge; and that the city then threatened to shut off the water to such industrial plants.

This threat led to the filing of the instant action in the Common Pleas Court of Cuyahoga County, Ohio.

The city, by way of answer, admits that: the village of Newburgh Heights had entered into a contract with the city; the village of Cuyahoga Heights has succeeded to the rights of the village of Newburgh Heights under this contract of August 11, 1916; the contract was the subject of litigation in the Common Pleas Court of Cuyahoga County in case No. 566906, decided February 18, 1947, and, in the Eighth District Court of Appeals, in case No. 20692, decided June 16, 1947 (**City of Cleveland v. Village of Cuyahoga Heights, 81 Oh Ap 191**); and, the city has disposed of sanitary sewage discharged into the intercepting sewer by the village.

The city further says "that the contract does not provide for the city of Cleveland to accept and dispose of sewage and industrial wastes of residents or inhabitants of the village of Cuyahoga Heights without cost or expense to the residents or inhabitants of said village."

The amended reply of the village "denies that the contract of August 11, 1916, does not require the city of Cleveland to accept and dispose of sewage and industrial waste of residents or inhabitants of the village of Cuyahoga Heights without cost or expense to the residents or inhabitants of said village, and further says that all of the matters and questions raised in the answer of the defendant were fully tried, determined and adjudicated between the parties hereto in the former suit referred to in plaintiff's petition."

The trial in the Common Pleas Court resulted in a judgment in behalf of the village; and, from that judgment, the city perfected an

appeal to this court on questions of law and fact. We have the matter before us de novo, with a stipulation that the cause be submitted to this court on the pleadings, the stipulations, and the evidence contained in the testimony and exhibits presented, in the trial court.

It was further stated in the stipulation that this court shall take judicial notice, as did the trial court, of the official records of the case of City of Cleveland v. Village of Cuyahoga Heights et al, Common Pleas No. 566906, of Cuyahoga County (37 O. O. 1); Case No. 20692 of the Court of Appeals of the Eighth Judicial District of Ohio (81 Oh Ap 191); and case No. 31323 in the Supreme Court of Ohio (motion to certify overruled 5-12-48); including all pleadings, briefs, exhibits, bill of exceptions, opinions and journal entries.

The instant litigation poses several possible questions, the first of which concerns the claim that all of the matters involved in this litigation were disposed of in the previous action where the city brought suit against the village—i. e., case No. 566906, Cuyahoga County Court of Common Pleas, and the appeal in that case, which is number 20692 in the Cuyahoga County Court of Appeals, for the Eighth Judicial District of Ohio.

If, either by the plea of res judicata, or under the doctrine of estoppel by judgment, we determine that the matters in the instant case have been litigated, then our inquiry ends. If, however, the matters here in issue are not disposed of by the prior action, then we must concern ourselves with what the parties meant when they said, among other things, in the following paragraph of part "Second" of the contract of August 11, 1916:

"C. The village of Newburgh Heights (Cuyahoga Heights) is hereby given the right to connect, at its sole cost and expense, any and all of its present or future sanitary sewers with said intercepting sewer, or with any portion of the city's intercepting sewer now constructed, by means of said manholes and said openings, as shown on the said map hereto attached, and to discharge all of its present and future sanitary sewage into said intercepting sewer, subject only to the limitations hereinafter set forth, and said sewage shall be disposed of by said City of Cleveland in like manner as other sewage conveyed through said intercepting sewer, without cost or expense to the village of Newburgh Heights (Cuyahoga Heights)."

On July 23, 1946, the city of Cleveland filed a petition, in the Common Pleas Court of Cuyahoga County, against the village of Cuyahoga Heights and certain of the officers of the village. In that petition, among other things relating to the action of the village, in proposing to connect an interceptor sanitary sewer to the southerly interceptor sanitary sewer of the city, the city alleged that:

"* * *and in addition thereto it (the proposed sewer) would introduce into the sewerage system of plaintiff city, industrial wastes in such great volume as to entirely destroy the useful operation of the biological processes of said disposal plant in the treatment of sewage now being disposed of thereby.

"* * *

"Plaintiff says that the acts hereinbefore described and threatened to be done by the defendant and defendant's officers will cause plaintiff irreparable injury for which plaintiff has no adequate remedy at law."

The answer of the village of Cuyahoga Heights to that petition, among other things, set out the contract of August 11, 1916, claiming thereunder the right to make a connection of its proposed intercepting sewer with the southerly intercepting sewer of the city.

The village further alleged, in that case, that, by the terms of the agreement of August 11, 1916, "sewage of said village would be disposed of by said city of Cleveland in like manner as other sewage conveyed through said intercepting sewer without cost or expense to the village of Newburgh Heights (Cuyahoga Heights)."

The, city of Cleveland filed a reply in that case to the answer as filed by the village of Cuyahoga Heights, which, among other things, said that "there is no valid and existing contract with the village of Newburgh Heights, Ohio, dated August 11, 1916, upon which said defendants (village of Cuyahoga Heights, et al.) may rely, in that said contract was entirely void in its inception as against public policy, and ultra vires of the respective municipalities, particularly the plaintiff; that, by reason of such alleged contract, the defendant village was given no right of any nature whatsoever with respect to the subject matter of the alleged contract."

It should also be noted, without stating them verbatim, that the claims of the parties to the lawsuit filed July 23, 1946, involved alleged orders of the Department of Health of the state of Ohio, given to the village of Cuyahoga Heights, to secure a method of disposing of sewage of the village; and that the plan for this interceptor sewer was approved by the Department of Health of the state of Ohio.

The trial of that case resulted in a judgment for the village of Cuyahoga Heights. On appeal of that judgment to the Court of Appeals on questions of law and fact, which means that the case was tried "de novo" by the Court of Appeals, a judgment was again entered in favor of the village of Cuyahoga Heights; the opinion of that court appearing, as heretofore stated, **81 Oh Ap 191.** Thereafter, the Supreme Court of Ohio, as also heretofore stated, denied a motion to certify. for review by that court, the record in that case.

The Court of Appeals of Cuyahoga County, in their opinion in that case, at **page 194** of **Volume 81 Oh Ap,** said, with respect to the then claims of the city of Cleveland:

"It is the claim of the city that the contract is void and against public policy, because by its terms the legislative officers of the city surrender for all times its free, legislative authority; because it grants a perpetual property right in the village to have its sewage disposed of through the southerly intercepting sewer free of charge, and as a burden on the taxpayers of the city and is, therefore, ultra vires; and that the contract fails because no measurable consideration moved to the city for the granting of the right claimed by the village."

It is thus seen that, not only did the city herein complain about the disposal of industrial wastes through this interceptor sewer, but

many other problems were raised concerning the meaning and scope of the agreement of August 11, 1916.

We believe that the judgment then rendered in that case conclusively determines all of the issues now before us. That judgment of the Court of Appeals, in the part pertinent here, said:

"1. The contract of August 11, 1916 between the city of Cleveland, Ohio, and the village of Newburgh Heights, Ohio, is a valid and binding agreement.

"2. The village of Cuyahoga Heights, Ohio, has succeeded to the rights and benefits conferred upon the village of Newburgh Heights, Ohio, in the contract of August 11, 1916.

"3. The city of Cleveland has been, since August 11, 1916, and is now, accepting and retaining the benefits arising under said contract of August 11, 1916.

"4. So long as the city of Cleveland accepts and retains the benefits arising under the contract of August 11, 1916, the village of Cuyahoga Heights, Ohio, has the right, in pursuance of the terms of said contract, to make—at its sole expense—connections of its sanitary sewers to the southerly intercepting sewer of the city of Cleveland and to discharge into said intercepting sewer all of the present and future sanitary sewage of the territory of the village of Cuyahoga Heights, and the city of Cleveland, in pursuance of the terms of said contract of August 11, 1916, has the obligation to dispose of all of said present and future sanitary sewage of the territory of the village of Cuyahoga Heights in like manner as other sewage which is conveyed through said intercepting sewer without cost or expense to the village of Cuyahoga Heights." (Emphasis ours.)

The original action between these parties—that is, the action filed in July, 1946—was for an injunction to prevent the village from joining the southerly interceptor sewer, and thereby utilizing the city facilities located in the village for the purpose of disposing of sanitary sewage, which included, as the city alleged, industrial wastes.

The validity, interpretation and scope of the agreement of August 11, 1916, was directly in issue. What were the rights of the parties under that agreement?

There were but two systems of sewage disposal: storm or surface sewage, which is not treated, and hence passes directly into established watercourses; and sanitary sewage, which consists of human wastes, as well as industrial wastes. These matters were in issue and litigated by the action filed in July, 1946.

"1. A final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them." Norwood v. McDonald et al, Admrs., 142 Oh St 299.

The right of the village to put industrial wastes in the southerly interceptor sewer was put in issue in the former action and determined in favor of the village. It cannot now be relitigated. It is not material

herein whether we base this conclusion upon the defense of res judicata, or estoppel by judgment, for the issue of industrial wastes being placed in the sewer was a fact litigated in the first action.

"3. A point or a fact which was actually and directly in issue in a former action and was there passed upon and determined by a court of competent jurisdiction may not be drawn in question in any future action between the same parties or their privies, whether the cause of action in the two actions be identical or different." **Norwood v. McDonald et al, Admrs., 142 Oh St 299.**

"Although 'res judicata' and 'estoppel by judgment' have been distinguished (see for example Gordon v. Gordon [Fla.], 59 So. [2d], 40), they are certainly akin. Briefly stated, 'estoppel by judgment' simply means that the final adjudication of a material issue by a court of competent jurisdiction binds the parties in any subsequent proceeding between or among them, irrespective of a difference in forms or causes of action."

**Mansker v. Dealers Transport Co., 160 Oh St 255, at page 260.**

See also: **Conold v. Stern, 138 Oh St 352.**

We determine, therefore, that the matters of the village permitting industrial wastes to flow into the southerly interceptor of the city has been heretofore concluded favorably to the village; and that hence the city cannot now prevent such sewage from passing from the village sewer system into the city sewer system, and by them treated as other sanitary sewage is treated for final disposal, without cost to the village.

We next consider the question of the right of the city, under the agreement of August 11, 1916, to levy rent, for the use of the sanitary sewer, upon each industrial user of water, which water is supplied by the city to the industries of the village.

The city of Cleveland, by agreement with the village of Cuyahoga Heights, supplies water to the inhabitants, including, of course, the industries located in the village. The city claims the right, since the enactment of §729.49 R. C. (§3891-1 GC), to charge rent for the use of the sanitary sewage services it furnishes to the water users of the village.

The claim is made by the city that this sewer rent is not charged to the village, but to the inhabitants, and hence is not within the free sewer service provided by the contract.

The city cites the case of **State, ex rel. Gordon, City Atty., v. Taylor et al, 149 Oh St 427,** saying that the determination in that case is authority for the action now taken to collect a sewer rent from the industries using the sewers of the village.

That case determined that, where an easement to build a sewer through the campus was granted to the city of Columbus, by Ohio State University, the consideration for which was the use of the sewer on the campus without cost or expense to the university, the agreement granting the easement did not exempt the university from payment of sewer rental charges thereafter imposed by an ordinance of the city to provide a fund for the payment of the cost and expense of the treatment and purification of sewage.

We must note that, in the above case, the campus of Ohio State University lies wholly within the territorial limits of the city of Columbus. In effect, Ohio State University is an inhabitant of the city of Columbus, and subject to its powers and prerogatives.

In the instant case, Cuyahoga Heights is an independent entity, separate and apart from the city of Cleveland. It has accepted the burden, first, of having sewers of the city of Cleveland placed along and under its streets; and, second, it has accepted the far greater burden of having placed, within the territorial limits of the village, one of the sewage disposal plants of the city of Cleveland.

The city of Cleveland has been casting an increasing amount of sanitary sewage and industrial wastes into these sewers, and hence to the disposal plant. The volume of sanitary sewage and industrial wastes from the village has also increased over the years, but certainly that was in contemplation of the parties when they executed the agreement of August 11, 1916.

This contract of August 11, 1916, has heretofore, by the case filed in July, 1946, been declared to be a valid and binding obligation, and a contract that was not beyond the power of the parties to execute. There is no attempt herein, on the part of an inhabitant of the village, to claim rights as an individual under the contract between the city and the village, as occurred in the case of **Blunk v. Dennison Water Supply Co., 71 Oh St 250.** The village has brought this action, saying that the contract between these parties does not permit the city to collect, from the inhabitants of the village, a rental charge for sewage disposal.

There can be no question but that it was contemplated in the original agreement, and included in the judgment entry filed by the Court of Appeals in the prior action, that all sanitary sewage from the territorial area of the village, which includes inhabitants, as well as industries, is to be disposed of through the city disposal plant. This judgment entry of the Court of Appeals, a portion of which is set out above, expressly stated that the sewage to be disposed of was all such sewage from the territory within the village.

No question is raised herein as to the right of these municipalities to enter into this contract; our problem concerns the scope of operation of this agreement. **Sec. 729.42 R. C.** The right of a city or village to construct sewers and sewage disposal works is not raised in the instant case. **Sec. 717.01 R. C.**

The authority which the city claims permits it to collect the rental charge herein is §729.49 R. C. This statute provides that a failure to pay the rental shall be "a lien upon the property served by such connection and if not paid when due shall be collected in the same manner as other municipal corporation taxes."

We believe that this statute does not permit one municipality to impose such a burden upon the inhabitants of another municipality, unless an agreement to that effect has been entered into by the municipalities.

The term "without cost" to the village, in the agreement of August 11, 1916, means "without cost in money." **Green, etc., v. Thomas, Mayor et al, 37 Oh Ap 489.**

We believe that the collection and disposal of sanitary sewage, including industrial wastes, as set out in the agreement, was meant to be a service rendered to the users of such service in the village without further charge upon such users by the city of Cleveland.

We determine herein that the matter of the disposal of industrial wastes of the village of Cuyahoga Heights, through the interceptor sewer of the city of Cleveland, has heretofore been adjudicated, with a result adverse to the city of Cleveland, and that such matter is not now an issue in these proceedings.

We further determine that a study of the contract of August 11, 1916, requires us to hold that, the sewage conveyed through the intercepting sewer by the village of Cuyahoga Heights shall be disposed of by the city of Cleveland, without cost or expense to the inhabitants, including the industries of such village.

The parties may prepare a journal entry in conformity with this opinion, granting exceptions to the city of Cleveland. The costs shall be paid by the appellant city.

Judgment as prayed for. See journal entry.

DOYLE, PJ, RADCLIFF, J, concur.